# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CAPE FEAR RIVER WATCH; et al.,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency,<br><br>Respondents. | No. 25-5819<br><br>Agency No. EPA-HQ-OW-2021- 0736; Environmental Protection Agency. |

## MOTION FOR LEAVE TO INTERVENE AS RESPONDENTS

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27, the Meat and Poultry Products Industry Coalition ("MPP Coalition" or "Coalition") moves for leave to intervene on behalf of the Respondents to the petition for review of an action by the United States Environmental Protection Agency ("EPA" or "the Agency") withdrawing the proposed rule entitled "Clean Water Effluent Limitations Guidelines and Standards for the Meat and Poultry Products Point Source Category."[1] EPA's action withdrawing the proposed rule was published in the

---

[1] Counsel for prospective Intervenors conferred with counsel for Petitioners and Respondent seeking their positions on the motion to intervene. Petitioners stated that they take no position on the MPP Coalition's

Federal Register on September 3, 2025 (90 Fed. Reg. 42538).

## STATEMENT OF INTEREST OF THE MOVING PARTY

The MPP Coalition is made up of national trade associations, whose members comprise a significant portion of the meat and poultry processing industries, and the farmers who rely on those processors, regulated by EPA's Meat and Poultry Products Effluent Limitations Guidelines (MPP ELGs).[2] The MPP Coalition has been closely engaged with EPA throughout its studies and other regulatory reviews specific to possible revisions of the MPP ELGs, has filed detailed comments, hosted meetings, and participated in inspections at nine different MPP facilities, among other engagements, in all aspects of EPA's MPP ELG rulemaking. The Coalition's interests and engagement in these rulemakings is significant, consistent, unique, and unquestioned.

---

motion to intervene until they review the filing. Respondent EPA stated that it takes no position on the motion.

[2] The MPP Coalition members include: The U.S. Poultry & Egg Association ("USPOULTRY"), the world's largest poultry organization, whose membership includes producers of broilers, turkeys, ducks, eggs, and breeding stock, as well as allied companies; The Meat Institute is the United States' oldest and largest trade association representing packers and processors of beef, pork, lamb, veal, poultry, and processed meat products; The North American Renderers Association (NARA) represents the interests of the North American rendering industry to regulatory and other governmental agencies, promotes the greater use of animal byproducts, and fosters the opening and expansion of trade between foreign buyers and North American exporters; The National Pork Producers Council (NPPC), an association of 43 state pork producer organizations that represent the interests of the 67,000 pork producers in the United States; The National Chicken Council is the national, non-profit trade association that represents vertically integrated companies that produce and process more than 95 percent of the chicken marketed in the United States; The National Turkey Federation (NTF) represents all segments of the turkey industry, including growers, processors, breeders, hatchery owners and allied companies.

## BACKGROUND

Pursuant to the Clean Water Act, 33 U.S.C. §1251 et seq. (1972) (CWA), EPA must promulgate effluent limitations guidelines (ELGs) for different industry categories to set nationally-applicable, technology-based effluent limitations, which serve as the baseline for pollutant limitations in effluent discharges from applicable point source categories. 33 U.S.C. §§1311, 1314, 1316, 1317, 1318, 1342, and 1361. EPA initially promulgated ELGs for the Meat and Poultry Products industry in 1974, and amended those ELGs in 2004. The existing MPP ELGs apply to MPP plants that discharge wastewater directly to waters of the U.S. pursuant to National Pollutant Discharge Elimination System (NPDES) permits issued by U.S. EPA or their state NPDES permitting authority.

In 2021, EPA announced that it intended to revise the MPP ELGs. *See* EPA's Preliminary Effluent Guidelines Program Plan 15 (Preliminary Plan 15) (USEPA 2021, EPA–821–R–21–003). On December 23, 2022, a coalition of environmental groups (including some Petitioners in this case) sued EPA alleging that EPA failed to revise the MPP ELGs to regulate plants that discharge indirectly, through publicly-owned treatment works (POTWs) into waters of the United States. *Cape Fear River Watch et al. v. EPA*, No.1:22–cv–03809 (D. D.C). That case was settled by a consent decree that obligated EPA to propose new MPP ELGs by December 13, 2023, and to take final action on that proposal by August 31, 2025.

*Cape Fear River Watch et al. v. EPA*, Case No. 1:22–cv–03809–BAH (05/03/23).

The Petitioners ask the Court to review EPA's action withdrawing the proposed rule, as set forth in a Federal Register notice published at 90 Fed. Reg. 42538 (September 3, 2025), entitled "Clean Water Effluent Limitations Guidelines and Standards for the Meat and Poultry Products Point Source Category." EPA's docket number is EPA-HQ-OW-2021-0736.

## ARGUMENT

The MPP Coalition seeks to intervene in this case because it has a direct and substantial interest in these proceedings that cannot be adequately represented by existing parties and that may be impaired if the arguments of Petitioners prevail. As demonstrated below, the MPP Coalition satisfies the standards for intervention set forth by this Court.

### A. The Standards for Intervention.

Federal Rule of Appellate Procedure 15(d) requires that any interested person seeking to intervene in a case must file a motion for leave to intervene "within 30 days after the petition for review is filed." F.R.A.P. 15(d). The motion must contain a concise statement of the interest of the moving party and the grounds for intervention." *Id.* Courts have held that this rule "simply requires the intervenor to file a motion setting forth its interest and the grounds on which the intervention is sought." *Synovus Fin. Corp. v. Board of Governors,* 952 F.2d 426, 433 (D.C. Cir.

4

1991). Circuit Courts, including this Court, look to the policies embodied in Rule 24 of the Federal Rules of Civil Procedure to inform their intervention inquiry. This Court has broken intervention as of right pursuant to Rule 24(a)(2) into the following four factor test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir.1993).

This Circuit "normally follow[s] practical and equitable considerations and construe[s] the Rule broadly in favor of proposed intervenors," recognizing that "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." Id. at 1179 (quotations and citations omitted); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) ("The rule is construed broadly in favor of the applicants.")  In addition, within the Ninth Circuit, trial courts must "accept as true the non-conclusory allegations made in support of an intervention motion." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

**B. The Motion to Intervene is Timely.**

This motion is timely because it is being filed within 30 days after the petition for review was filed on September 15, 2025. (Case No. 25-5819, 9/15/2025, DktEntry 1.1). This proceeding is still in its earliest stages and allowing the MPP Coalition to participate will not cause any disruption in the proceedings.

**C. The MPP Coalition and Its Members Have Significant Protectable Interests Relating to the Subject of This Proceeding That May be Impaired or Impeded if Petitioners Prevail.**

The test for whether a party seeking to intervene in a case demonstrates sufficient interest is "a practical, threshold inquiry." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995) (quotations and citations omitted), abrogated on other grounds, *Wilderness Society*, 630 F.3d at 1177-78, 1180. The requirement of a protectable interest is not a rigid, technical or onerous requirement, in that Rule 24(a)(2) "does not require a specific legal or equitable interest." *Wilderness Society*, 630 F.3d at 1179 (citation omitted). Rather, it is a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* "[I]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* "Furthermore, a prospective intervenor has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.*

6

(quotations and citations omitted).

The MPP Coalition faces practical impairment of its interests in this proceeding, specifically with regard to the relief Petitioners seek in their petition. By way of background, Clean Water Act Section 304(m) establishes a process for EPA to develop over time industry-specific effluent limitations guidelines ("ELGs" or "guidelines") and then to review and revise, as necessary, those guidelines after studying the various industries subject to Section 304; 33 U.S.C. § 1314.

As indicated above, EPA announced its intent to study and potentially revise the MPP ELGs in its 2021 Preliminary Plan 15. At that point in time, the MPP Coalition members began working closely with EPA staff to educate them on past and current industry processes that contributed pollutants to wastewater that would be directly or indirectly discharged to regulated waterbodies. The MPP Coalition helped EPA develop a detailed questionnaire that EPA would send out to as many as 5,055 facilities pursuant to CWA Section 308. Facilities that received EPA's questionnaire were obligated to provide answers to EPA's questions within a limited timeframe or face legal consequences for failing to act. EPA used the information that it collected from MPP Coalition member facilities, and others, to draft proposed modifications to the MPP ELGs. EPA also visited a number of MPP Coalition member facilities and facility staff showed EPA staff exactly how those operations were run and the potential pollutants that could exist. EPA collected samples of the

wastewater and reviewed technologies identified to limit pollutant discharges; all with the assistance from facility staff.

EPA then proposed revised MPP ELGs and provided three specific regulatory options for those revisions. 90 Fed. Reg. 42543. The MPP Coalition members then had a series of meetings with EPA to discuss the Agency's proposed rule and participated in multiple hearings that EPA held for the public to gain input on its proposal. The MPP Coalition also drafted and submitted fifty-two pages of comments on EPA's proposed rule and continued to conduct studies to help supplement EPA's understanding of the MPP industry. In their comments, the MPP Coalition warned EPA about upsetting the existing relationships that indirect dischargers had with their local POTWs, who also warned EPA not to regulate indirect discharges. The MPP Coalition found errors in EPA's models and cost analyses. It identified for EPA the significant impact EPA's proposal would have on the industry by forcing the closure of multiple plants, creating significant unemployment in small communities. It also asserted that EPA was overestimating the environmental impacts of the industry and the benefits further regulation would generate. Finally, it identified that the existing ELGs still represented the best technologies for controlling pollutants.

In short, the MPP Coalition participated substantially in EPA's process to consider revisions to the MPP ELGs and the MPP Coalition supports EPA's

conclusion to withdraw the proposed rule. Any changes to EPA's findings and conclusions would significantly impact the MPP Coalition's protectable interests.

### D. Exclusion from this Litigation Would Impair the MPP Coalition's Ability to Protect Its Interest.

The Ninth Circuit follows the guidance of the Rule 24 advisory committee notes, which states that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting 1966 advisory committee note). The MPP's interest would be impaired if it were not permitted to intervene as a party in this case because it indisputably possesses unique and detailed information about the meat and poultry products industry that is necessary for any consideration of proposed changes to effluent guideline limitation impacting the industry and its members would suffer significant, including irreparable, harm, including the closure of businesses, if Petitioners prevail.[3]

The MPP Coalition is uniquely positioned to provide input into any settlement discussions or future briefing on the MPP ELGs and if it were excluded from this case, it would be impeded from protecting the interests of the MPP's members.

---

[3] By way of example, the MPP Coalition comments provide a detailed critique of EPA's analyses regarding the potential impacts its proposed rule would have on the MPP industry. The Coalition identified how EPA had mistakenly miscalculated the economic impacts of its proposed rule, and that real world data demonstrate that EPA's proposal would cost the industry five times more than EPA's estimate, including the closure of up to 340 plants, the potential loss of over 93,000 direct jobs and potentially loss of 300,000 indirect jobs in all impacted communities.

### E. The Existing Party Cannot Adequately Represent the MPP Coalition's Interests.

To demonstrate that an existing party cannot adequately represent the interests of the movant, the party seeking to intervene "need only show that representation of his interest 'may be' inadequate, not that the representation will in fact be inadequate." *Diamond v. District of Columbia,* 792 F.2d 189, 192 (D.C. Cir. 1986); *see also Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972). It is often the case that "governmental entities do not adequately represent the interests of aspiring intervenors." *See Fund for Animals v. Norton,* 322 F.3d 728, 736-37 (D.C. Cir. 2003).

Here, EPA cannot adequately represent the interest of the MPP Coalition. Associations are in a position to present different arguments that are "likely to serve as vigorous and helpful supplement to EPA's defense." *Diamond v. District of Columbia, at 912-13.* Even though a government agency and a private party seeking intervention may agree about the lawfulness of the agency's action, the private party's perspective may differ and its interest may diverge from those of the agency during the course of the litigation. *Fund for Animals,* 322 F.3d at 736-37. The MPP Coalition must participate in this case to fully and adequately represent its and its members' interests and because those interests may differ from EPA's interests, EPA

cannot be an adequate representative of the interests of the Coalition.

## CONCLUSION

For the foregoing reasons, the petition to intervene as Respondents of the MPP Coalition should be granted.

Respectfully submitted,

/s/*Jeffery S. Longsworth*
Jeffrey S. Longsworth
John A. Sheehan
Earth & Water Law LLC
1455 Pennsylvania Ave. N.W., Suite 400
Washington, DC 20004
(301) 807-9685
Jeffrey.longsworth@earthandwatergroup.com
John.sheehan@earthandwatergroup.com

Dated: October 14, 2025          Attorneys for the MPP Coalition

## CERTIFICATE OF SERVICE

I hereby that on this 14th day of October 2025, a copy of the foregoing Motion for Leave to Intervene as Respondents was electronically filed with the Clerk of the Court using the Court's ACMS system. All registered ACMS users will be served using the Court's ACMS system.

*/s/ Jeffery S. Longsworth*
Jeffrey S. Longsworth